Good morning, Counsel. Good morning, Your Honor. May it please the Court, Kevin King for appellate marijuana. Let me ask you, do you have any time you want to reserve? Yes, Your Honor. Four minutes, please. Very well, thank you. We'll do our best to help you. Thank you, Your Honors. Your Honors, this case presents a specific, narrow question. Is the work performed by plaintiffs' appellees at the Santa Rita Jail governed by the general provisions of the California Labor Code, or instead is it governed by the more specific, later enacted provisions of the California Penal Code? Let me ask you this, Counsel, just right off the bat. From my perspective, this is a pure California law issue. We are authorized, of course, to make determinations about pure California law under certain circumstances, but why isn't this a kind of a case that ought to be certified to the California Supreme Court for it to make a determination based upon very old law and a proposition which obviously conflict in certain ways? Why shouldn't this be certified to the California Supreme Court? Certainly, Your Honor. There are really, in our view, three reasons why certification is unwarranted here. The first of those reasons is that when you look at the total statutory picture, we think the answer here is clear. And that basis has... Counsel, you haven't cited us to any controlling either California Supreme Court law or even published California appellate law that, you know, establishes the standard here. Isn't that correct? Your Honor, I readily would concede that there is no California Supreme Court or even California state appellate case that resolves this narrow issue. Indeed, in the 100 years plus years of the Labor Code's existence, no court has ever held that the Labor Code applies to county jail inmates. But that said, back to my three reasons, this Court said, and Judge Thomas, in an opinion that you joined, in the Alliance for Property Rights v. City of Idaho Falls case from 2013, it was addressing that exact issue, should we certify to the state Supreme Court. And what the Court said there is that, yes, it's true, it's possible that you could look at a statute and see it different ways, but once you applied all the canons of statutory interpretation, there was really only one reasonable conclusion. And as a result, certification was not warranted. We think the same is true here. So that's the standard? If there's only one way to decide this case, we should not certify it? Is that what you're saying? Yes, Your Honor, that is exactly what I'm saying. Then I know which side you think it is. Yes, Your Honor. We think that once you look at the total statutory picture here, the only answer is that the penal code controls, and I'll get to that in a minute, but I want to give my other two reasons on certification if I could. The second is that this is an exceptionally narrow case, an exceptionally narrow issue. We're dealing just with one part of the case, one issue. And Judge Rupp? The question I also have is, on appeal at this point in time, we're not to consider the plaintiff's 1983 claims and the 13th Amendment. That's not at all involved in the present appeal. Is that correct? Yes, Your Honor, that's correct. And I think that's one reason why this case is so narrow. And so, Judge Wu, to a case that you and Judge Thomas were on together with regard to the football players at the University of Southern California, it was a California labor code case. We look alike. And, you know, it arose under the labor code, and this Court answered the question. It did not certify that question. It was a narrow question, the Court stressed, and we think the same is true here. We're dealing with a narrow question. And then third, there's delay in the district court proceedings. You know, the Court here continued the case. The case is going forward in the district court and has been since the appeal was certified. And so if you certify this question to the California Supreme Court, the district court case is going to go on, and there will be a whole lot of proceedings that will occur that wouldn't need to occur. Counsel, you'd have to admit that even though the issue itself is somewhat simply phrased, there's so many components of it that touch on state law, a lot of whom which have not been decided. I mean, I don't understand why we would take it upon ourselves to say for the state, you know, in all these various areas, to answer this question, these are what we're going to say. Why would we do that? Well, I think, you know, just as in the Alliance for Property Rights case, when you look at the total picture, it becomes very clear. It's true, I admit. There are many different pieces. But when you put the pieces together, the answer is so clear and so one-sided that really, you know, I think there's no— So in other words, if we think that there's any piece that is not so clear, then we should send it to the California Supreme Court. Your Honor, I wouldn't go quite that far. You know, in the Alliance for Property Rights case, the court said it's possible that you could look at the statute more than one way. But what they said there is after you've applied all the canons of construction, then at that juncture it was clear. What role does the fact that wage and hour issues and prisons and what the state can and cannot do, even with respect to the federal government, that's all very—it's a hot subject right now. What role, if any, should that play in our—whether or not we send this to the California Supreme Court? Your Honor, I'm thinking here, and I believe the answer to that is really it should not play a role here. The question is, you know, what do the statutes mean? And, you know, what's the proper interpretation of those statutes under controlling California canons of construction? If I maybe could shift gears and address that for a moment. We think that the simplest, most straightforward way of resolving this appeal is to look to Section 4019.3 of the California Penal Code, a provision which, by the way, the district court did not factor into its analysis. Had the district court done so, I think this case would have come out very differently. In fact, we believe Section 4019.3 is dispositive. That provision provides, and you can find it, by the way, at page 15 of the indentment to our opening brief, but it provides that the county boards of supervisors may provide that each prisoner confined in or committed to a county jail be paid up to $2 for each eight hours of work in such county jail. Work here being done in the county jail? Isn't the work here being done outside of the county jail? No, Your Honor, the work is being done inside the county jail. All exclusively. In other words, none of it steps outside of the boundaries of the jail. That's my understanding, Your Honor. That's right. It's all within the industrial kitchen at the San Diego jail. I'll ask the other side of that question, too. Let me ask you, if it did occur outside of the jail, would that affect your analysis? Parties have not briefed the issue, but with that caveat, I would think that it would because the statute says in such county jail. In other words, you're saying it would be an issue if any of the work was done outside the county jail. I believe that it would be. Again, we haven't briefed it, but that's my understanding. So what you have are really two irreconcilable regimes. You've got the labor code on the one side and the penal code on the other, and they're irreconcilable for three reasons. The first is that under the penal code, monetary compensation is optional. It's not required, and that's through the statute's use of the word may. The second point of irreconcilability is that the penal code imposes a statutory maximum compensation rate that is well below the minimum wage prescribed by the labor code. And then third, what you've got under the penal code is a regime that allows each county in California to make its own compensation decisions as opposed to a mandated uniform statewide rate. And so this court's task, given that irreconcilability, is to figure out which of the two regimes applies, and that's per the California Supreme Court's Lopez decision. And the answer, when you apply Lopez, is that the penal code controls here. Counsel, the penal code 4019.3 addresses what wages county boards can pay prisoners for labor. Why should we read that to cover what private companies pay prisoners? Your Honor, it refers to where the work is done, work in such county jail, and it refers to who does the work, inmates confined there. Well, that's one interpretation, but doesn't that also maybe involve who the payor is, if you will? Isn't that a factor in the statute? No, Your Honor, it's not. Again, the statute has two elements. Is the work done by a prisoner confined in or committed to a county jail? And is the work done in such county jail? And if those are met, the statute applies. I would add, moreover, Your Honor, that here, you know, the plaintiffs have sued the county and Aramark together as joint defendants. And so, and the work consists of preparing meals for consumption in the Santa Rita jail, by the inmates, by the staff. So, you know, the idea here is that even under a four test, like the one that the plaintiffs have proposed, the work here is done for the county. So, in other words, the food products that are prepared here do not leave the prison or county jail facility? Most, I would say the overwhelming majority of the meals stay in the facility. There is a small number of them that go out to other county jails in California. Okay, so in other words, they all, none of the meals that are prepared go, or like, for example, sold to the public. They're all within the system. That's correct, Your Honor. And you can know that from Exhibit D to our motion for judicial notice, which this court granted. Those are the satellite facilities. So, you have these points of irreconcilability, and what do you do about that? Lopez answers the question. Lopez says, you're going to take the specific over the general. You're going to take the later in time over the earlier in time. Here, both of those factors go. What do we do about the California Constitution, Article 14, Section 5? This is Proposition 139? It's now part of the California Constitution. Doesn't the California Constitution have priority over individual statutory provisions? Well, certainly it does, Your Honor, but there's no inconsistency here. I think no one has argued that somehow Proposition 139 mandates compensation. On the contrary, what Proposition 139 says, in the limited language that it has about county jails, is that the operations of these public-private partnerships in county jails shall be governed and operated by local ordinances. Well, but has there been a local ordinance enacted from the county of Alameda covering this? No, Your Honor. There is no ordinance here. And I think then you have to figure out, well, what do we do about that? Why should we figure it out rather than the California Supreme Court? Well, I think, Your Honor, it's because this is a simple question of statutory interpretation. It's not that simple. I don't understand where you get to the fact that it's so simple. It doesn't seem simple to me. Well, Your Honor, I would concede that you've got to look at a lot of things. But once you do that, once you do that work, as an alliance for property rights, it becomes clear. And 4019.3 is the most important part of that. And, again, the district court did not take that statute into account. I guess maybe I'd just give a few examples of the statutory context in the legislative history that we think makes this a straightforward case. If you look, for example, at Section 4325 of the Penal Code, what it says is that inmates may earn money when they work through a jail industry authority, quote, if approved by a board of supervisors pursuant to Section 4019.3. That language would serve no purpose if, as the plaintiffs assert, the Labor Code was generally applicable. Similarly, Section 4017 of the Penal Code, here's what it says. County inmates will be considered to be county employees for purposes of the Labor Code's workers' compensation provisions if they're injured or if they die in the course of fighting a fire. So it's a very narrow and specific incorporation of the Labor Code. And what that shows here is that the legislature was aware of how to make the Labor Code applicable to county jail inmates. It did it for firefighting injuries. And if it's done there and not elsewhere, there's an inference to be drawn. An inference the California Supreme Court says shows that the legislature knew how to make the Labor Code applicable, didn't do it here. So that's some of the context from the Penal Code side. But the picture looks the same if you look at it from the Labor Code side. The Labor Code refers to inmates only twice, in Sections 3370 and 6304. And what those provisions do, they both refer to state inmates. One of them says that for workers' compensation benefits, they're going to apply partially. The other says that for occupational safety code, that it's going to apply to state inmates. Again, showing that the legislature knows how to make the Labor Code applicable to inmates. And that it's done so only in narrow contexts. The Labor Code says nothing at all about work done by inmates in county jails. The Penal Code speaks expressly to that issue. And this Court's task is to give effect to that disparate treatment. The legislative history, as I was mentioning, goes more or less in the same direction. You can look at any number of sources, but I think three are really most important here. The first is the Governor's Bill File from when Section 419.3 was first enacted in 1959. And what you see in that Bill File, and this is... How do you address California Penal Code Section 2717.8? Certainly, Your Honor. 2717.8 refers to inmates in state facilities. And my recollection is that what it says is that those inmates will be paid the prevailing wage, less a deduction of up to 80% for things like room and board and so forth. Okay, so? So, a few differences here. First off, it applies expressly only to state inmates and not to, you know, county jail inmates on the one hand. Second, it has this deduction mechanism, up to 80%. What the plaintiffs are looking for here is entirely different. They're looking for full compensation under the minimum wage and under the overtime provisions. Something that no inmate anywhere in the California system gets. All right. I think I understand your argument. Proposition 139, Your Honor, it includes provisions about inmates in county jails. It says what happens there. It says that they'll be governed by local ordinances. Yeah, but the problem is that there's never been a local ordinance that's been promulgated. And so, therefore, I think that's the problem, you know. In other words, you're saying that without a promulgation, you just apply the norm, which is, you know, they're not entitled to any money. Well, yes, that's what we're saying. There's, you know, plaintiffs have not pointed to any provision of California law that says that a county is obligated under Prop 139 to enact an ordinance. Prop 139 did not amend the labor, I'm sorry, the penal code. It didn't amend Section 409.3, which uses the permissive word may. And if you look at the legislative history, it shows the default here is no monetary compensation. The bill jacket says that. The legislative reports, and it exhibits B and C to our motion for judicial notice. They all say the same thing. Well, you would have conceived, though, that the Prop 139 itself did consider, you know, not only inmates in prisons, but also persons in custody in county jails. And then you had the subsequent enactment of certain provisions of the penal code, which did include this compensation provision. But I agree with you, it doesn't mention county jails. It just mentions Department of Corrections. So there's kind of like a void there. Yeah, you know, Prop 139 left in place the penal codes regime that allowed each county to make its own choices. That's the way we look at it. It didn't amend 4019.3. It didn't amend any other part of. But it did provide that you could do these types of private contracts, you know, insofar as Department of Corrections is concerned, where they did set up this program. But again, this is an absence. And so you're saying, again, I'm repeating myself, sorry. Certainly, Your Honor. And, you know, I also want to stress that this is not an all-or-nothing affair. The inmates in these county jail programs are compensated in a variety of ways, not monetary compensation by default. But they receive sentence reduction credits under Section 4019 and 4019.1.  If you look at the voter guide for Prop 139 at pages 503 and 505 of the excerpts of record, what you'll see there is that one of the policies that animated the people to adopt Prop 139 was to expand the opportunities for job training, opportunities that at the time were not plentiful enough. Well, that's included in Section 4325 of the penal code. It incorporates those notions. 4325 refers to jail industry authorities, yes. That's right. But it includes, as a rationale for that type of scenario, the fact that it offers persons in jail custody an opportunity for these benefits that you're talking about. Right, yes. And related to that is the language from 4325 I quoted earlier, which says that in those 4325 programs, county jail inmates can earn funds, if authorized by the Board of Supervisors, under what? Under Section 4019.3. So, you know, sort of all roads lead back to Rome in that regard. Do you want to save the balance of your time, Counsel? It's up to you. I do. Thank you, Your Honor. Very well. Thank you. All right. We'll hear from the county. Good morning. Good morning, Your Honors. May it please the Court. My name is Adam Hoffman, arguing today on behalf of Appellants County of Alameda and its Sheriff, Gregory J. Hearn. Your Honors, I'd like to jump off of Judge Wu's comments real quickly about the absence of an ordinance here. As Mr. King described, there is no affirmative requirement, no legal obligation for a county to adopt an ordinance. But even if there were, California law prescribes a remedy for that, which is a writ of traditional mandate under Code of Civil Procedure Section 1085. A person concerned with that omission could theoretically, if there were a mandatory obligation, bring an action to compel the adoption of an ordinance. The consequence of the absence of an ordinance is not the importation of the labor code as a kind of penalty for the absence of that ordinance, which is the net effect of the district court's order here. If I may, I'd like to amplify Mr. King's analysis of the relevant statutory and constitutional text, principles of statutory construction, with a quick discussion of the practical consequences that flow from the district court taking the labor code, which has no application to county inmates, and inserting it to fill what the district court perceived as a gap in the policy implementation of Proposition 139. Your Honors, most obviously, the county is whipsawed by the, on the one hand, constitutional allocation of authority to set compensation to determine whether and how much to pay, capped by, of course, Penal Code Section 419.3, with the assertion that the labor code requires $15 per hour. Counsel, before we go further with the argument, can you help me with this? As you know, our case law indicates that we are, if you will, authorized to interpret pure California law questions. If there's either a Supreme Court case to that effect, or some court of appeal decision that has answered the question, can you cite the court to any, either California Supreme Court or a court of appeal decision that answers the specific question in this case? No, Your Honor. But I will submit, Your Honor, that California Supreme Court precedent regarding the principles of statutory construction do control here. The arguments that are on the other side, the conclusion reached by the district court, are all premised on policy considerations that elide the principles of statutory construction. So I would submit, Your Honors, that the court applying those principles, as they've been well established by California law, will reach the result that the district court ordered. It's only by entertaining. And I understand your perspective on that, but basically you're asking us to take canons of construction which are well known and apply them here. And if we were a California court, hey, no problem. What I struggle with is we're not a California court. We're a federal court. And we're not supposed to get involved in these issues unless there is clear California case law that tells us exactly what the result should be. What am I missing? Well, two things, Your Honor. I don't think you're missing anything, except that we believe the statute's control here in lieu of case law. But also, as Mr. King noted, there are. But it's a construction of the statute. That's the problem. It isn't a case that's construed the statute. It's just the statute. Yes, Your Honor. That's absolutely true. But the Mico-Monaco case that this court issued on the issue of certification says that the court is well suited to implement well-settled principles of state law statutory construction. Certification is not needed to fill that gap. But as Mr. King also noted, there's a question of delay here. And finally, Your Honor, there was no motion, obviously, you know, to certify. And so if the court is inclined to do that, we would submit that briefing would be appropriate on that issue. Does there need to be a motion to certify if this panel concludes that the California Supreme Court is the better court to decide California law on this important question? I don't believe it's required, Your Honor. I think it would be appropriate in this instance because we believe that certification is not needed and is not appropriate here. Your Honor, forgive me. We had reserved five minutes for the county. I see my time is up. Can I conclude very briefly? Of course. Of course. Okay. Your Honor, I think walking through some of the practical implications, I'll spare the court the details, but there are a long list of labor code provisions that under the district court's conclusion that the, quote, unquote, protections of the labor code extend to pretrial TTEs, to the FLEs. While narrowly presented in this case, we think will inevitably lead to a range of future claims, however erroneous, for other protections under the labor code, theoretically rights under collective bargaining agreements, pension rights, if indeed, as the district court held and as the FLEs have argued, the pretrial detainees are employees of the county and Aramark under California state law, a range of potential other claims, none of which make any sense in the context of the current environment. I did let you run on a little bit there, but you're over time. Okay. And you've got some rebuttal time. So we thank you for your argument there. And the court may have other questions for your side. Thank you, Your Honor. So, Mr. Siegel, I believe you're up, right? Yes, sir. Proceed. Thank you. Good morning. May it please the court. My name is Dan Siegel. It's nice to be back before you after some years of pandemic and other things. We're delighted to have members of the bar back and ourselves for the most part. So, welcome. Thank you again. I think one of the major mistakes appellants make in this case and in this appeal is where they start. The analysis here must begin with the labor code. The labor code is the set of statutes under which my clients brought this case. But the labor code has never been held to apply to inmates. And so, therefore, why would we start there? Well, I'm going to explain that very briefly, Judge Wu. But the labor code, according to the decisions of the California Supreme Court and this court, must be liberally construed. So, they've never been included. Inmates have never been treated as employees. Then why would we? I don't understand why we're starting there. Okay. The liberal construction, which the California Supreme Court and this court has endorsed, then would look at these claims of the plaintiffs and determine whether one of the exceptions to labor code jurisdiction argued by appellants should apply. But I think the starting point Well, normally one works to get a livelihood to earn money to live, but inmates, they have their room and board. Temporarily. They're not allowed to go out to cinema and entertainment. I want to stress that our clients are not convicted of anything. They are pretrial detainees. That's a 13th Amendment argument, isn't it, that's not raised here? Let me ask you, do you agree that the 1983 13th Amendment argument is not raised on this appeal? That claim is not before the court, but it is part of the background of this claim because the defendants argue, based upon laws that primarily apply to convicted prisoners for whom the 13th Amendment allows coerced labor. So that's a context that, although I understand may not be critical in this analysis, is still important. And I think when the court looks at what's going on here from, again, a practical point of view, the clients are not convicted. They are innocent under the law. And the question then is, is there something about the treatment of convicted prisoners that must bar their claims? Counsel, let me ask you this. I credit your argument here, but I've asked your opposing counsel the same thing. Now, you all won below. But do you agree that this is a pure California question? It's not been decided previously either by the California Supreme Court or a California District Court of Appeal. Do you oppose the panel certifying the question in this case to the California Supreme Court? Judge Smith, we would not oppose that. Okay. And I would suggest, however, that the court first determine whether the outcome of this case is not compelled by the California Supreme Court's decisions in Leyva and Martinez. And if the court is of the view that I believe underlies Judge Wu's questions, the court may not agree that the decisions interpreting the California Labor Code require the result that we argue for in this appeal. But the decisions of the California Supreme Court go even further than stating a strong presumption of applicability. And particularly, Martinez talks about its endorsement of the previous decisions of the Industrial Welfare Commission of California, which goes further than simply stating broad application of the Labor Code, but define an employer as someone who directly or indirectly exercises control over wages, hours, or working conditions. When you think about that definition of who is an employer, it appears to us that it's not relevant that these particular employees happen to be pretrial detainees. Wouldn't those same things apply to inmates in prisons? Those same factors that you're talking about? And those persons aren't treated for purposes of the Labor Code as being employees, etc. So, I mean, it's a totally different scenario between what occurs inside a custody facility and outside of a custody facility. The provisions of the Penal Code, which are clear, make it possible to require convicted felons and California prisoners to work without compensation. So that's the difference here. So I would like to now move quickly to the argument. Can I ask a quick question before I forget? Sure. Okay. Is all the work that is done by the plaintiffs in this case on the county jail facilities themselves and only utilized in such facility or other county facilities? The meals produced by our clients are consumed at Santa Rita Jail, which is, I think, consistent with the Court's point, but they're also sold to other counties. Counties in California are... But the counties for use in other county prison facilities or jail facilities? Yes. Okay. All right. But those counties are distinct legal entities. I understand that. But the work itself is done entirely in a county jail? In the Alameda County Kitchen, and the meals are sold to Alameda County and other counties. Okay. Now, I want to... So the defendants argue that there are three reasons why the Labor Code provisions should not apply. The first one is that Prop 139 doesn't require that the workers at the Santa Rita Kitchen be paid. I would go one step further. Prop 139 does not apply to this case at all, except to the extent that the policies underlie it. Because what Prop 139 says, which is relevant to the point I'm trying to make, is set forth in page 8-2 attached to Aramark's brief. And I just want to call the Court's attention to what it says in 8-2. Article 14, Section 5 of the California Constitution, allows the state or county sheriffs to set up contracts with private entities for work to be done by prisoners. But it says if that is done, it is done for county jail programs by local ordinances. So it's not simply that Prop 139... That's not quite the language of the provision, though. You're kind of, like, characterizing it. That's not a verbatim quote. Judge, I'm sorry. I believe I am. I haven't... I thought it said the director of corrections or any state, sorry, any county sheriff or other local government official charged with jail operations, blah, blah, blah, blah, blah, blah. And then toward the end it goes, by rules and regulations prescribed by the director of corrections and for county jail programs by local ordinances. That's what it says. Such programs shall be operated and implemented pursuant to statutes, which, of course, relates to the state prison system, and for county jail programs by local ordinances. That's correct. All right. So the way I read that is that in the absence of a local ordinance, not only is there not a requirement that the prisoners be paid any particular rate or any rate, there's no authorization for the contract at all. Now, that's not an issue that has been raised in this appeal, but it seems to me that in the absence of an ordinance... Well, that's the reason I was asking your opponent that question as to whether or not there was a local ordinance, and he's recognizing that there isn't one in this situation. Right. So the question is, in the absence of a local ordinance, how does that affect the entire controversy? I think then it's one of the reasons why we default to the labor code. Why not default to the penal code? Penal code doesn't address the situation that we're talking about. Well, why doesn't it? Well, the quoted provision does. You mean 419.3? Yes. Okay. So that was one of the three points that I wanted to address in the sense of the appellant's defenses. And there are many reasons, and we discussed them at length in our brief, but I want to focus primarily on one reason. Besides the fact that 419.3 says nothing about prisoners who work for private profit-making companies in county jails, the legislative history of 419.3 shows that that statute is part of a longer statutory scheme which deals with how counties may treat persons in county jails. What's most critical about that is that this statute, 419.3, and the other sections of that scheme were passed in 1959. That is relevant because prior to the passage of 139 in 1990, contracts between either the state or counties and private companies for the use of prisoner labor on private enterprise were forbidden by the state constitution. You got Prop 139. That's right. But the question which I believe that appellants' arguments beg is why doesn't 419.3 address this situation? It's because when the legislature passed 419.3, there was no reason to address the current situation because it was unlawful under the California Constitution. So how could a statute that was passed in a context which was clear, not ambiguous, about whether these programs were lawful apply post-1990? They're arguing that there's an inconsistency. I don't necessarily feel that there's an inconsistency, but that doesn't necessarily mean that your side wins. Well, I understand. Nothing means that we necessarily win, but I think it's a strong point as to why 419.3 does not apply to this situation given historically when it was passed. And the county spends five pages in its brief discussing the principles of statutory construction under California law. Let me ask you this. When Prop 139 was passed, there was legislation that was enacted, and that legislation didn't affect 419.3. Right. It didn't have to because that legislation was passed pursuant to the new section of the state constitution that you and I were discussing five minutes ago, which authorizes the legislature to pass statutes for programs like this in the state prison. Not for purposes of counties, because those are supposed to be done by local ordinances, but then there was no local ordinance passed. Exactly. Okay. And then the last argument that the defendants make as to why our clients are not entitled to compensation for their work under the California Labor Code is by citing two cases brought under the Federal Fair Labor Standards Act. And they cite several cases, Burleson, Villareal, Hale, and others. And, again, the California Supreme Court has clearly addressed the fact that these FLSA standards do not apply in California. In the Martinez case, which we think is one of the two controlling cases here from the California Supreme Court, the California Supreme Court made it very clear, as it said, quote, in no sense is the Industrial Welfare Commission's definition of the word employ based upon federal law. And that's the Martinez case at 66-68. So, again, to sum up, we would not object to this matter being certified to the California Supreme Court, particularly if this court concludes that the Supreme Court's previous pronouncements in the cases that we cite do not dispose of the issues here. We emphasize that with respect to none of the three arguments made by defendants, is there a prohibition? Let me ask you this question. The county is making the argument that it's going to be a parade of horribles if we agree with the district court in the sense that there are all these provisions of the labor code, some of which cannot be obviously applied to detainees. What are we supposed to do about that? I mean, it just seems to me it's just a totally different universe. That's, I guess, what we would call the slippery slope argument. But the point is this, Judge Wu. Judge Tiger has very carefully analyzed provisions of the California Labor Code that we urged him to apply to this case and except with the case of Labor Code Section 1194, rejected our arguments and has pointed out that, at least in terms of the provisions of the California Labor Code brought to his attention, they do not apply here. So I don't think that this court needs to worry about the wholesale incorporation of the California Labor Code into this case. But this is addressing 1194. Why should detainees be paid a minimum wage? I want to say two things about that. First of all, we are not here to discuss, ultimately, the remedy to be applied in this case. We're here to discuss. But the district court judge said it was applicable. But, again, why would that provision be applicable? Why would 1194 be applicable? Why should they be paid a minimum wage? Because they are working for a profit-making company. But they're also the Rubin Board is being paid for by the citizens of the state. Right. And that's exactly why I brought up the point that we're not yet talking about remedies. In the district court decision at page 21, note 6, Judge Tiger wrote, Today's issue does not address the issue of remedies, meaning who will pay what and when. If we prevail at the end of the day, the court will have to fix a remedy. And it's my opinion, and only my opinion, but based upon the way in which the court has looked at this case, is that the court would come up with something that's like what is being done at the state prison level. Say, well, okay, there's a wage rate to be applied, but there are a series of deductions which can be as much as 80 percent of that wage rate to pay for the prisoners. Why would we ever do something of that sort? I mean, why would we take it upon ourselves to do something of that sort rather than have it? In other words, I don't understand why. Again, it's a remedy. We're not here for the remedy. Okay, I understand. But also, that's the remedy that the state statutes have created for state prisoners. So by analogy, that would make sense as a remedy at the trial court level for providing payments to the non-convicted prisoners who stay at Alameda County Jail. Thank you. You all done? I'm all done. I have, unless the court has further questions, I'm satisfied. Other questions by my colleague? No, thank you for your argument. I appreciate it. Thank you. So we'll now hear back from the county. We have a little time left over. Mr. King? Thank you, Your Honors. Just four very quick points on rebuttal. Understand we have just a few minutes here. First off, to start where Mr. Siegel left off there, the court lacks authority to blue pencil the statutes in the way he was arguing for. The statutes here, the claim under Section 1194, calls for the full amount of minimum and overtime wages under the Labor Code, something that never has been applied to inmates in California county or state facilities, as we noted. Second, if the district court order here ---- Counsel, does it, when we define prisoners, does it matter whether his clients have not been convicted yet? Does that matter in any way? No, Your Honor, it does not. And the way you know that is that the California Supreme Court, we were talking earlier about having California Supreme Court authority, the DIEC decision, I hope I'm pronouncing it correctly, cited in our opening brief, interprets the phrase confined in or committed to a county jail, the same phrase that we've got in 4.019.3. And what they said there is the word confined in means the state of being incarcerated. Okay. So it doesn't matter whether they've been convicted yet. That's right, yeah. Nobody in this case, the district court or plaintiffs, has ever provided a basis to distinguish between convicted and not convicted. Not to be acute, but if Nancy Pelosi's husband had been jailed overnight and they were doing meals, you could have him work there in the kitchen, you wouldn't have to pay him anything. That's right. He wouldn't receive any wages, you know, necessarily. But, again, he would get all the other benefits that we talked about before, the job training, the sentence reduction credits, all of that. So that's point one. Point two, if the district court order here is upheld, the financial cost and the risk of other claims will create an incentive for counties to shut down these programs, to stop them, and therefore to lose the benefits that Prop 139 was seeking to make available. The voters there found that there weren't enough of these programs to meet demand, and so the idea was to expand them. But if you vastly increase the cost of these programs, you're not going to get the benefit that the voters were seeking. Third, counsel referred to the fact that these public-private partnerships did not exist at the time that Section 419.3 was enacted. But if you look at the Bell decision, cited at pages 15 to 16 of our reply brief, and the Garcia decision from the California Supreme Court, cited within the Bell decision, what you will see is a well-established principle of interpretation in California that a generally worded statute like Section 419.3 brings within its scope anything that might subsequently come along, even if it was not in the legislature's mind at the time that the provision was enacted. Fourth and finally, as to certification, I would reiterate my friend's request that the court allow short supplemental briefing on that point. This court does not reflexively certify to a state court every time it gets a question of state law. There are standards for that. What would you add that you haven't already given to us on that issue? I think there are instances where this court has a 1292B interlocutory appeal and where it might not certify, even though the appeal involves a state law question. There are other circumstances where this court has declined to certify. I gave a few reasons, but I think because the parties haven't briefed that issue yet, we would request if the court's inclined to go down that road, that it hear from us expressly on that first. With respect, my colleagues, of course, have more than an equal voice in this. I think we're pretty familiar with the law on that issue. Unless my colleagues disagree, perhaps we can invite you to give us a 28-J letter if you want to, but I don't think we want to delay for some long period of time to have rebriefing on the supplemental briefing. Any thoughts, Judge Thomas? Well, no. We've considered certification hundreds of times. We know the standard cases you cite, I think, aren't on point. Basically, we assess this in terms of the workload of the state court, the issues involved in the case, whether it's going to have further ramifications, if there's controlling authority. So there are a long list of factors we consider on certification. If you want to submit something quickly, fine, but I think we're well aware of the certification standards, and we've applied them. And they apply somewhat differently in every state. California does not allow district courts to certify. And so, for example, in the Idaho case you cited, the parties did not seek certification on Idaho before the district court, which allows it. And then we create, if you recall the decision, we said there was a presumption against certification, which doesn't exist here. So I think we're familiar with the law. Any thoughts, Judge Drew? So I think what you're hearing is we probably don't really need anything in this area. If you want to give us something, you can do it right away, 28-J letter for both parties. But, frankly, we probably don't need it. So any other questions by my colleagues? Failing that, we thank all counsel for your argument in this interesting case. The case just argued is submitted, and the court stands in recess for the day. Thank you, Your Honors. All rise.
judges: THOMAS, SMITH, Wu